**Paul T. Cullen, Esq. (#193575)**
**THE CULLEN LAW FIRM, APC**
**19360 Rinaldi St., Box 647**
**Porter Ranch, CA 91326**
**Tel: (818) 360-2529; (626) 744-9125**
**Fax: (866) 794-5741**
**E-mail:  paul@cullenlegal.com**

Attorney for CASSIE STROUP, individually on
behalf of herself, all others similarly situated,
and the general public

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASSIE STROUP, and individual, on behalf of herself, all others similarly situated, and the general public, | **CASE NO.: CV 14-07678 CAS**<br>**CASE NO.: CV 14-06447 CAS**<br>(Hon. Christina A. Snyder) |
| Plaintiff, | |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| PREMIERE INTERNATIONAL CORP., a Delaware corporation and DOES 1 to 10, inclusive, | DATE:  December 14, 2015<br>TIME:  10:00 a.m.<br>CTRM: 5 |
| Defendants. | Hon. Christina A. Snyder |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES .............................................5

I.   INTRODUCTION ...................................................................................5

II.  SUMMARY OF THE LITIGATION.....................................................7

III.   SUMMARY OF THE SETTLEMENT.........................................10

IV.   THE NOTICE PROCEDURE ....................................................11

V.  FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
WARRANTED .............................................................................................12

   A.  The Class Is Sufficiently Numerous ............................................13

   B.  Questions of Law and Fact are Common to the Class ..................13

   C.  Plaintiffs' Claims Are Typical of the Class.................................15

   D.  Plaintiffs and Class Counsel Are Adequate to Represent the Class..............15

   E.  Superiority of the Class Action Method.......................................16

VI.   THE STANDARDS FOR FINAL APPROVAL OF THE PROPOSED
CLASS SETTLEMENT ARE INDISPUTABLY SATISFIED ...........................16

VII.  CONCLUSION ..........................................................................18

TOA..

## NOTICE

**ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 14, 2015, at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 5 of this Court, located at 312 North Spring Street, Los Angeles, California, 90012, Plaintiff Cassie Stroup ("Plaintiff") will move for Court approval of the proposed class-action settlement herein.  Pursuant to the terms of the settlement agreement, Defendant has agreed not to oppose this Motion. Said Motion shall be based upon this Notice of Motion, the accompanying Memorandum of Points & Authorities filed herewith, the Declaration of Paul T. Cullen, the Settlement Agreement entered into by the Plaintiffs and Defendant (collectively the "Parties"), and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

DATED: December 7, 2015            **THE CULLEN LAW FIRM, APC**

By:   _/s/ Paul T. Cullen_
     Paul T. Cullen, Esq.
     Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On October 19, 2015, this Court granted preliminary approval of a $500,000 non-reversionary class action settlement for a group of 183 tour group leaders who worked for the defendant, Premiere International Corp., a Delaware corporation (hereinafter sometimes referred to as Defendant) and allegedly also worked for the two Released Parties Peak DMC North America and Intrepid Travel Proprietary Ltd. (hereinafter "Released Parties").  This proposed class action case was initially filed in state court, but Defendant timely removed the matter under standard diversity jurisdiction principles.  Aside from the instant matter, which focuses on state employment law violations, Plaintiff also filed a separate matter with the same exact title, seeking collective action status (i.e. related case number 2:14-CV-06447-CAS-JCG) under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.  At the time of settlement, collective action claims were abandoned in favor of state law claims, since the collective class claims were more than likely time barred for absent class members and posed little chance of success compared to the state law claims herein.  The parties' counsel, who had vigorously litigated against one another for two years regarding a separate portion of the Defendant's and Released Parties' work force, concluded very early on that, given the incredible similarities between this case and the preceding, related

litigation (i.e. *Allen et al. v. Peak DMC North America et al.,* USDC Case No. CV-12-5165-CAS (sometimes referred to herein as the *Allen* litigation), early mediation of the cases should be attempted.  The parties informed the Court of their plan to engage in early mediation, and the Court continued the Scheduling Conference until a date after the scheduled mediation.  The parties then crafted and disseminated a *Belaire-West* letter, after which Plaintiff's counsel undertook to interview as many members of the putative class as possible and reviewed pertinent documents that were exchanged by the parties, including several thousand documents that were produced in the *Allen* litigation.  Armed with the results of the interviews, the relevant documents, and an intimate knowledge of the general business operations of the companies at issue, Plaintiff mediated this case for a full day with a highly respected mediator, Michael Dickstein, at the end of which day the parties entered into a short-form memorandum of settlement.  The parties promptly notified the Court of the proposed settlement, and the Court canceled the upcoming Scheduling Conference.  It took several months thereafter of additional arm's-length negotiations to craft the final settlement agreement for which the parties currently seek final approval.

The specific terms of the settlement are set forth in the Stipulation and Agreement of Compromise, Settlement, and Release (hereinafter the "Settlement") entered into by the Parties and which was filed herein at docket no.

33-2.  Pursuant to the Settlement terms, Defendant agreed to pay $500,000 to create a non-reversionary fund to settle all claims.  Each Class Member was provided with the court-approved Notice describing the settlement in detail based upon the assumption that the administrative costs, attorneys' fees and costs, and incentive awards are approved by the Court as requested. Class Members need not submit a claim form in order to receive their share of the settlement proceeds. They simply have to not opt out of the Settlement.  The Court herein approved all the necessary documents to be provided to Class Members to inform them of the Settlement. The Notice of (1) Proposed Class Action Settlement, and (2) Final Settlement Approval Hearing ("Notice") are found at docket no. 33-2.

Plaintiff submits that the proposed settlement meets the criteria for final approval and is well within the range of what would be fair, reasonable, and adequate in this case.  Plaintiff requests that the Court grant final approval of the settlement.

## II.    SUMMARY OF THE LITIGATION

### A.    <u>Nature of the Case and Litigation History</u>

#### 1.    Initial and Subsequent Pleadings

On August 12, 2014 Plaintiff Cassie Stroup commenced the Action in the Los Angeles Superior Court on behalf of herself, and all other individuals allegedly similarly situated to her with respect to the claims asserted. In the Action, Plaintiff

alleged that Defendants failed to provide Plaintiff and other employees employed by Defendants during the Relevant Class Period minimum and overtime wages to which they were entitled in violation the California Labor Code. Plaintiff also alleged that Defendants failed to provide such employees with meal and rest periods in violation of the California's Labor Code, failed to furnish accurate itemized wage statements, failed to pay wages timely upon separation, engaged in unfair competition in violation of California Business and Professions Code section 17200, *et seq*., and also asserted other claims under the Labor Code Section 2802. Defendant removed the case, and after a brief time, it was transferred to this Court as a related case.

On August 15, 2014 Plaintiff filed a separate complaint in this Court alleging that Defendants failed to provide Plaintiff and other employees employed by Defendants during the Relevant Class Period minimum wages to which they were entitled in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. On December 31, 2014 the two Actions were consolidated and transferred to this Court.

## 2. Discovery and Investigation

In this and the related, preceding litigation, the parties engaged in active discovery. The preceding litigation, i.e. *Allen v. Peak DMC, North America* (USDC Case No. CV 12-05165 CAS (JCGx)), raised nearly identical claims as

those raised in this litigation.  The employees at issue in *Allen* essentially performed the same job, based out of the same business location, working with the same management, for a nominally different defendant with a different brand name as did the employees whose claims are being resolved by this settlement.

Plaintiff propounded requests for production of written documentation that related to Defendants' policies and procedures, as well as interrogatories. Defendants produced several thousands of pages of documents and personnel data that were reviewed and analyzed by Plaintiff's Counsel.  These documents proved crucial to the investigation of the claims raised in the litigation, and in making ultimate determinations as to the alleged violations of law and potential damages. In addition to obtaining responses to written discovery, Plaintiffs' Counsel took depositions of corporate representatives on several topics including, *inter alia*, employee training, job duties and responsibilities, Defendants' policies regarding payment of wages, and provision of meal and rest periods.

In addition to the written discovery and depositions, the parties distributed a *Belaire-West* letter, which resulted in Plaintiff receiving class contact information that enabled him to conduct a survey and interviews of approximately 20% of the class members.

The information obtained during both formal and informal discovery was critical in allowing Class Counsel to properly evaluate the potential claims being

raised, and was used extensively for mediation and the ongoing settlement discussions thereafter.

### 3. Mediation

The parties engaged in mediation before Michael Dickstein on March 24, 2015.  During a full day mediation the parties reached a settlement.  Thereafter, the parties prepared a full settlement agreement.  In short, the resulting settlement was the product of thorough, arms' length negotiations between counsel, which was conducted under the supervision of a neutral, third-party mediator, after the exchange of significant discovery.

## III.   SUMMARY OF THE SETTLEMENT

The terms of the settlement are that the Defendant and/or the Released Parties (i.e. the DMC North America and Intrepid Travel Proprietary Limited, an Australian proprietary company) agreed to pay $500,000 as a true common fund to settle all claims herein.  This Court granted preliminary approval on October 19, 2015.  Of that, Class Counsel has requested payment of $166,666.66 (or one third of the common fund) as a fee award, reimbursement of costs advanced up to $20,000 (however, the actual request is substantially lower, i.e. $11,588.48, leaving the rest to be redistributed among participating class members).  Plaintiff has requested a class representative enhancement award of $7500.  Each of these foregoing deductions from the common fund are the subject of a concurrently filed

motion for approval of attorney's fees, reimbursement, and payment of a $7,500 class representative enhancement. The claims administrator, i.e. CPT Group, also requests payment of its fees, which the class was notified were estimated to be approximately $23,000. The most recent communications from the claims administrator indicate that their final bill will be approximately $21,000. Here again, the savings will be redistributed to the class. As each of these standard deductions from the common fund are both authorized by the settlement agreement and are routine in similar such settlements, Plaintiff submits that the settlement to herein should be approved in full.

## IV.   THE NOTICE PROCEDURE

The notice provided to the Settlement Class was adequate and satisfies Rule 23 and all other due process requirements as it was designed to provide broad notice and intended to reach as many Class Members as reasonably possible. Rule 23 requires that "the court ... direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). While actual notice is not required, the notice must be reasonably calculated to apprise the Settlement Class of the pendency of the settlement and afford them an opportunity to present their objections or opt-out. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S.

306, 315(1950).  The notice plan provided under this Settlement did just that.  It apprised Class Members of the pendency of the Action and their right to object to the Settlement by US Mail and e-mail. This Court previously approved the form and manner of notice. The Parties and the Claims Administrator steadfastly administered the notice and claims process in accordance with the Settlement Agreement and this Court's Order.  Plaintiff will send this Court upon receipt the most recent declaration from the Claims Administrator, CPT Group, which will demonstrate that all members of the putative class were provided the notice packet by way of US mail and the number to whom e-mail packets were sent.  To date, the claims administrator has not reported any opt outs or objections that have been lodged with them.

## V.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

Certification of a settlement class is a regular feature of class action litigation, and an approved procedure that ought to be followed in this case. Plaintiff needs only make a "prima facie showing" of the requirements of Rule. *See* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:573 (The Rutter Group 2006) In determining the propriety of class certification, a court may not delve into the underlying merits of the claims. The fundamental question "is not whether...plaintiffs have stated a cause of action or will prevail on

the merits, but rather the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, supra, 417 U.S. at 178.

Here, the proposed Class sought for final certification under the Settlement is defined as:

> All of Defendants' Tour Leaders (who were also known as Trip Leaders, Tour Guides and/or Group Leaders) who worked for Defendants in the United States during the Relevant Time Period and up to the time the court rules on whether this matter should proceed as a class action. The time worked in question includes, but is not limited to the time Tour Leaders spent in training.

For the reasons set forth herein, Plaintiffs assert that this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3) for settlement purposes only.

## A.    The Class Is Sufficiently Numerous

The class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P., Rule 23(a)(1).  Here, there are 183 former employees identified from the Defendant's records as having been employed in California during the Class Period. That is sufficiently numerous.

## B.    Questions of Law and Fact are Common to the Class

There must be "questions of law or fact common to the class." Fed. R. Civ. P., Rule 23(a)(2). Further, Rule 23(b)(3)'s predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id*. at 619.

Here, Plaintiffs assert that Tour Leaders were subjected to uniform employment practices by the Defendant and Released Parties, including uniform payment practices of a daily salary that did not meet California minimum wage standards, non-provision of meal and rest breaks, non-provision of code-compliant pay stubs, waiting time penalties, and unfair business practices.  In her complaint, Plaintiff identified numerous questions of fact and law that, if resolved, would result in resolution for all class members, not just Plaintiff alone.  Specifically, if the evidence were found to demonstrate that by the very nature of the job of Tour Leader, i.e. driving passengers and leading them across the country on adventure Tours, left itself to near 24 hour a day work, and if it were determined that the salaries paid for such work did not cover all hours at minimum wage, then liability could be established across the class.  Similar such arguments could be made with respect to the absence of any meal and rest period policies, pay stubs, and the like.

## C.     Plaintiffs' Claims Are Typical of the Class

The Federal Rules further require that the claims or defenses of the representative parties be typical of the claims and defenses of the class. Fed. R. Civ. P., Rule 23(a)(3). Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent. *Lightbourn v. County of El Paso, Tex*. 118 F.3d 421, 426 (5th Cir. 1998).

Here, Plaintiff asserts the same claims as those of the Class and there are no significant differences between the facts applicable to Plaintiff and those of the other Class Members. The claims of the proposed Class representative here are typical of the Class as a whole. Plaintiff's interests are co-extensive with those of the Class and Plaintiffs seek relief identical to that sought by every other Class Member.

## D.     Plaintiffs and Class Counsel Are Adequate to Represent the Class

The representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P., Rule 23(a)(4) To satisfy this element, plaintiff must establish that: (a) the class representatives do not have a conflict of interest; and (b) class counsel will adequately represent the interest of the class. See, *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, as set forth in the Cullen Decl. ¶ 24, Plaintiff does not have any known conflicts of interest

with other class members.  She has no business or personal relationship other than that of attorney-client with Class Counsel's office.  Id.  Moreover, she has hired experience class counsel that has three times previously been vetted by this Court as adequate class counsel.

### E.  Superiority of the Class Action Method

Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of adjudication." Plaintiffs assert that the factors articulated in Rule 23(b)(3)(A)-(C) favor class certification for settlement purposes only. Plaintiffs assert that it is difficult to believe that any Class Members have an interest in controlling the prosecution given the relative small sums compared to the costs of litigation, generally. In any event, Class Members who want to pursue a separate action were given the option to opt-out. Further, the Parties are unaware of any competing litigation asserting some or all of the same claims pled in this action. Cullen Decl. ¶ 23. Finally, the Class is comprised of employees who worked for Defendant in California, including within this District, and Plaintiff asserts that it is thus desirable to concentrate the issues in this forum.

## VI.  THE STANDARDS FOR FINAL APPROVAL OF THE PROPOSED CLASS SETTLEMENT ARE INDISPUTABLY SATISFIED

A proposed class action settlement may be approved if, after allowing absent class members an opportunity to be heard, the Court finds that the settlement is

"fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In answering the question of whether a settlement is fair, reasonable, and adequate and reasonable as prescribed by Rule 23(e), district courts have been instructed to balance several factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026; *Churchill*, 361 F.3d at 575. Here, the balance of the factors demonstrates that settlement warrants final approval because it is fair, adequate and reasonable.

The Parties reached agreement on the terms of the proposed settlement through a vigorous debate of legal and factual theories by counsel and extensive arm's-length negotiations.  Here, as set forth in detail in the declaration of Class Counsel, although plaintiff believed she had a strong case, and reasonably believed that she would be able to demonstrate that uniform salary policies applicable to the class resulted in nonpayment of minimum wages under California law, she also recognized the risk, expense, complexity, and likely duration of further litigation. As always, there is a risk of maintaining class certification throughout the trial, and the amount offered in settlement was roughly 62% of a best case scenario estimate

of the damages incurred but 14 times the realistic exposure value calculated by Class Counsel given the serious risks regarding collectability.  As noted both in the motion for preliminary approval and in the declaration of class counsel filed concurrently herewith, substantial formal discovery had been completed in the preceding, related litigation as well as informal discovery by way of the Belaire West notice and class member interviews prior to engaging in mediation.  The views of experienced counsel, including not only class counsel herein, but also the mediator militated toward settlement.  Finally, there has not been a single objection of which Class Counsel has been made aware the date.  As such all of these factors favor final approval.

## VII.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant final approval of the Settlement Agreement and order the parties to fulfill its terms forthwith.

DATED: December 7, 2015                              **THE CULLEN LAW FIRM, APC**

By:  /S./ *Paul T. Cullen*
                                                    **PAUL T. CULLEN**
                                                    Counsel for Plaintiff